UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SAMUEL HARRIS,**

    **Plaintiff,**                           Case No. C2-04-CV-1179
                                           JUDGE GREGORY L. FROST
    **v.**                                     Magistrate Judge King

**CITY OF ST. CLAIRSVILLE, OHIO,** *et al.***,**

    **Defendants.**

### OPINION AND ORDER

This matter comes before the Court for consideration of a motion for summary judgment (Doc. # 93) filed by Defendants, Patricia Bruhn, Frank Sabatino, John Bukmir, Tim Porter, John Swan, Linda Burech, and Jim Weisgerber all of whom have served as members of the St. Clairsville City Council ("Council"), a memorandum in opposition (Doc. # 100) filed by Plaintiff Samuel Harris ("Plaintiff"), and a reply memorandum (Doc. # 102) filed by Council.

Due to the Court's desire to more fully analyze the issues that the motions aforementioned present, this Court adopts its previous Opinion and Order (Doc. # 111) with regard to "Evidentiary Issues," and strikes the "Discussion" section of that Order. (Doc. # 111.)

### A. Background

Plaintiff was the owner of two separate parcels of real property: the real estate adjacent to Interstate 70 ("Interstate Property"), which originally was located outside St. Clairsville, Ohio; and the Terrace Mobile Home Park ("Terrace Property"), which is located within St. Clairsville's limits. Plaintiff's Interstate Property (along with two adjacent parcels) was annexed from Richland Township to St. Clairsville in 2002.

1

St. Clairsville is a municipal corporation located in Belmont County, Ohio and is the exclusive provider of electric, water, and sewage services to the owners and occupants of property which is located within the city limits. It is also a political subdivision of the state of Ohio.

Plaintiff alleges that all defendants named in the Third Amended Complaint, as a group, engaged in a scheme for the purpose of forcing Plaintiff to part with a portion of Plaintiff's Interstate Property. Plaintiff further argues that defendants took two approaches in furtherance of the alleged conspiracy to pressure Plaintiff to sell the Interstate Property. First, Plaintiff alleges that defendants generated false and overstated water and electric bills for utility services at the Terrace Property. Plaintiff argues that defendants then enforced these inaccurate bills by improperly placing liens on the Terrace Property and directly interfering with the relationships between Plaintiff and the tenants of the Terrace Property. Plaintiff alleges that defendants annexed Plaintiff's Interstate Property in violation of multiple substantive and procedural requirements of Ohio's annexation law. (Doc. # 59 ¶ 60.) Plaintiff states that he first discovered in late 2002 that the Interstate Property had been annexed when he learned that St. Clairsville was convening a planning commission meeting to consider zoning of the Interstate Property. Plaintiff attended the zoning meeting in February 2003 where he informed city council that he never signed the petition or agreed to annex his property.

In connection with the allegations, Plaintiff seeks compensatory damages, punitive damages, and a court order "de-annexing" his Interstate Property under the following legal theories of relief: tortious interference with contract (Count One); illegal and improper annexation under Ohio law (Count Two); a "taking" of his property in violation of the Fifth and

Fourteenth Amendment to the U.S. Constitution (Counts Three and Four); civil conspiracy (Count 5); and 42 U.S.C. § 1983 (Count 6).[1]

Despite Plaintiff's allegations, the affidavits of Council (Doc. # 93) set forth that he or she (1) knows of no plan on the part of St. Clairsville to acquire Plaintiff's Interstate Property; (2) knows of no plan or conspiracy on the part of Mayor Robert Vincenzo or other St. Clairsville officials to pressure Plaintiff to sell his Interstate Property to St. Clairsville and, if such a plan or conspiracy has taken place, did not participate in such a plan or conspiracy; (3) knows of no plan or conspiracy among any St. Clairsville officials to generate fraudulent water bills for the Terrace Property, and if such a plan or conspiracy has taken place, did not participate in any such plan or conspiracy; (4) knows of no plan or conspiracy among St. Clairsville officials to generate or file fraudulent liens for unpaid electric bills on the Terrace Property and, if such a plan or conspiracy has taken place, did not participate in such plan or conspiracy; (5) knows of no plan or conspiracy among St. Clairsville officials to refuse maintain electric utility poles at the Terrace Property and, if such a plan or conspiracy has taken place, did not participate in such a plan or conspiracy; (6) has not been involved with anyone in any type of any agreement to acquire Plaintiff's Interstate Property as a part of a plan to develop real estate in Belmont County; (7) has not been involved in and has no knowledge of any employee of St. Clairsville soliciting a bribe, accepting a bribe, or engaging in any other unlawful or illegal activity.

Further, each affiant states that, except to vote as a council member, he or she had no involvement in the annexation of Plaintiff's Interstate Property to St. Clairsville or the zoning of that property.

---

[1] Count Seven of the Third Amended Complaint, alleging negligence on part of Defendants, was recently dismissed by this Court. (Doc. # 108.)

The affidavits also demonstrate that: (1) before City Council had any involvement in the annexation of Plaintiff's Interstate Property, the proposed annexation had been approved by the Belmont County Board of Commissioners; (2) when the proposed annexation of Plaintiff's property came before City Council for a vote, each affiant had no reason to believe or suspect that Plaintiff's signature on the petition for annexation that been submitted to the Belmont County Board of Commissioners had been forged; and (3) the affiant neither forged Plaintiff's signature on the petition nor had knowledge of anyone else doing that.

Finally, each affiant stated that each of his or her votes on the zoning of Plaintiff's property was not intended to deprive Plaintiff of his right to develop or sell his property, but it was based on the view that "Office and Institution" zoning for the property was in the best interests of the St. Clairsville and nearby residents.

### B. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of showing the absence of any such "genuine issue" rests with the moving party: it must inform the district court of the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ P. 56(e).

The nonmoving party's burden at the summary judgment stage is as follows:

When a motion for summary judgment is made and supported as
provided in this rule, an adverse party may not rest upon the mere

4

>allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

Here, the Court must therefore grant a motion for summary judgment if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

### C. Propriety of Exhibits

In its Opinion and Order granting St. Clairsville's motion for summary judgment (Doc. # 145) on all counts of Plaintiff's Third Amended Complaint, this Court struck from the record Plaintiff's Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 31, 34, 35, 36, 38 and 39.  Here, Council does not move to strike these exhibits, however, given this Court's prior analysis, it would be improper for this Court to now consider the exhibits aforementioned.  Fed. R. Civ. P. 56(e).  Consequently, this Court's analysis of the motion at hand does not rely on the exhibits that this Court has stricken from the record.

### D. Analysis

Council argues that Plaintiff has offered no evidence of the involvement of Council other than its acts to annex and subsequently zone Plaintiff's Interstate Property.  (Doc. # 93 at 9.)  In other words, Plaintiff offers no evidence that Council has acted in any manner outside its official capacity as city council members.  *Id.* at 9, 10.  Consequently, Council posits that it is entitled to absolute immunity for its action in its legislative role, and therefore Council is entitled to judgment as matter of law with respect to all claims against it.  (Doc. # 93 at 9, Doc # 100 at 5.)  The Court finds Council's argument well-taken.

The United States Supreme Court has held that "absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.' " *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *see also Tucker v. Richmond*, 388 F.3d 216, 224 (6th Cir. 2005).  In *Bogan*, the court emphasized that voting is "quintessentially legislative." *Bogan*, 523 U.S. 54 (holding that petitioners' acts of voting for an ordinance are legislative, and therefore petitioners are entitled to absolute legislative immunity).

Moreover, the Ohio Supreme Court has emphasized that the doctrine of legislative immunity is "elementary," "fundamentally sound," and "universally accepted." *Incorporated Village of Hicksaw v. Blakeslee*, 103 Ohio St. 508, 517, 134 N.E. 445, 448 (1921).

Here, Plaintiff presents no evidence to create a genuine issue of material fact that suggests that Council acted in any manner outside its official capacity. Rather, this Court finds that the only involvement that Council had with Plaintiff and his property took place when it voted in its official capacity to annex and/or zone Plaintiff's Interstate Property. (Doc. # 93.) Consequently, this Court finds that Council is entitled to absolute immunity for its actions taken in its legislative role, and that Plaintiff is barred from asserting any claim against Council in its official capacity. Therefore, this Court grants based on immunity Council's motion for summary judgment on all claims against Council in its official capacity. (Doc. # 93.)

This Court recognizes, however, that immunity would not extend to claims against Council if in its individual capacities they engaged in "malicious, bad faith, wanton or reckless actions". *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 639 N.E.2d 31; *see also Chester v. Neyer*, 392 F. Supp. 2d. 939, 959 (S.D. Ohio 2005).

Here, Plaintiff argues that Council in its individual capacities are liable for civil conspiracy (Count 5) for participating in a scheme to "willfully, intentionally, and maliciously" deprive Plaintiff of his property and his money. (Doc. # 59 ¶ 77; Doc. # 100 at 6.)

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *Aetna Cas. & Surety Co.,* 22 F. Supp. 2d at 703-04. Under Ohio law, to succeed on a claim of civil conspiracy, a plaintiff must show that: (1) the defendants shared a common understanding or design to commit an unlawful act; (2) the alleged co-conspirator

shared in the general conspiratorial objective; and (3) an act was committed in furtherance of the conspiracy that caused injury to the complainant. *Id.* "A conspiracy claim must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Jordan v. Murphy*, 145 Fed. Appx. 513, 520 (6th Cir. 2005) (quoting *Avery v. Rossford, Ohio Transp. Improv. Dist.*, 145 Ohio App. 3d 155, 762 N.E.2d 388 (Ohio App. 2001).

Post annexation and initial zoning of Plaintiff's Interstate Property, a request for rezoning was made. In stark contrast to what Plaintiff alleges, the evidence presented, as it relates to the request for rezoning, construed in a light most favorable to Plaintiff suggests that: (1) the planning commission initially issued a recommendation that a request for a zoning change on Plaintiff's Interstate Property be approved by City Council; (2) despite that initial recommendation, the planning commission continued to deliberate the issue; (3) the planning commission apparently changed its mind and subsequently recommended to City Council that the zoning request be denied; and (4) City Council on September 7, 2004 accepted the planning commission's later recommendation and rejected the request for a zoning change. (Doc. # 93, Doc. # 100, Doc. # 102.)

In light of Council's affidavits and the fact that Plaintiff has presented no evidence that suggests that Council conspired with one another or with someone outside of the municipality, this Court finds that there is no genuine issue of material fact that suggests that Council, in its individual capacities engaged in "malicious, bad faith, wanton or reckless actions" as Plaintiff contends. *See Fabrey,*, 70 Ohio St.3d 351, 639 N.E.2d 31; *Chester v. Neyer*, 392 F. Supp. 2d. 939, 959 (S.D. Ohio 2005).

8

Thus, this Court also grants Council's motion for summary judgment on all claims raised against council members in their individual capacity. (Doc. # 93.)

### E. Conclusion

In conclusion, this Court **GRANTS** Council's motion for summary judgment (Doc. # 93) on all counts of Plaintiff's Third Amended Complaint. The clerk shall enter judgment accordingly and terminate this Defendant upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

   /s/ Gregory L. Frost

**GREGORY L. FROST**

**UNITED STATES DISTRICT JUDGE**