## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**SAMUEL HARRIS,**

        **Plaintiff,**                     **Case No. C2-04-CV-1179**
                                              **JUDGE GREGORY L. FROST**
     **v.**                            **Magistrate Judge King**

**CITY OF ST. CLAIRSVILLE, OHIO,** *et al.*,

        **Defendants.**

### OPINION AND ORDER

This matter comes before the Court for consideration of a motion for summary judgment (Doc. # 116) filed by Defendants Robert Vincenzo, Thomas Murphy, Dennis Bigler, Shelley Fortney, and Al Davies all of whom are officials of the City of St. Clairsville, Ohio ("Officials"), a memorandum in opposition (Doc. # 122) filed by Plaintiff Samuel Harris ("Plaintiff"), and a reply memorandum (Doc. # 136) filed by Officials.

### A. Background

Defendant Vincenzo is the Mayor of the City of St. Clairsville, Ohio ("St. Clairsville"). Defendant Bigler is the Director of Public Services for St. Clairsville. Defendant Murphy is St. Clairsville's Zoning Administrator. Defendant Fortney is the St. Clairsville's Utilities Manager. Defendant Davies is the St. Clairsville's Law Director.

St. Clairsville is a municipal corporation located in Belmont County, Ohio and is the exclusive provider of electric, water, and sewage services to the owners and occupants of property which is located within the city limits. It is also a political subdivision of the state of Ohio. Plaintiff was the owner of two separate parcels of real property: the real estate adjacent to Interstate 70 ("Interstate Property"), which originally was located outside St. Clairsville; and the

Terrace Mobile Home Park ("Terrace Property"), which is located within St. Clairsville's limits. Plaintiff's Interstate Property (along with two adjacent parcels) was annexed from Richland Township to St. Clairsville in 2002.

Plaintiff alleges that all defendants named in the Third Amended Complaint, as a group, engaged in a scheme for the purpose of forcing Plaintiff to part with a portion of Plaintiff's Interstate Property.  Plaintiff further argues that defendants took two approaches in furtherance of the alleged conspiracy to pressure Plaintiff to sell the Interstate Property.  First, Plaintiff alleges that defendants generated false and overstated water and electric bills for utility services at the Terrace Property.  Plaintiff argues that defendants then enforced these inaccurate bills by improperly placing liens on the Terrace Property and directly interfering with the relationships between Plaintiff and the tenants of the Terrace Property.  Second, Plaintiff alleges that defendants caused the wrongful annexation of Plaintiff's Interstate Property.  Plaintiff states that he first discovered in late 2002 that the Interstate Property had been annexed when he learned that St. Clairsville was convening a planning commission meeting to consider zoning of the Interstate Property.  Plaintiff attended the zoning meeting in February 2003 where he informed city council that he never signed the petition or agreed to annex his property.  Subsequently, Plaintiff alleged that defendants annexed Plaintiff's Interstate Property in violation of multiple substantive and procedural requirements of Ohio's annexation law.

In connection with the allegations, Plaintiff seeks compensatory damages, punitive damages, and a court order "de-annexing" his Interstate Property under the following legal theories of relief: tortious interference with contract (Count One); illegal and improper annexation under Ohio law (Count Two); a "taking" of his property in violation of the Fifth and

Fourteenth Amendment to the U.S. Constitution (Counts Three and Four); civil conspiracy

(Count 5); and 42 U.S.C. § 1983 (Count 6).[1]

## B. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  The initial burden of showing the absence of any such

"genuine issue" rests with the moving party: it must inform the district court of the basis for its

motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any," which it believes demonstrates the absence

of a genuine issue of material fact.  Fed. R. Civ P. 56(e).

 The nonmoving party's burden at the summary judgment stage is as follows:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is a genuine issue
> for trial. If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

 In viewing the evidence, the Court must draw all reasonable inferences in favor of the

nonmoving party who must set forth specific facts showing that there is a genuine issue of

material fact for trial.  *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873

(6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

---

[1]      Count Seven of the Third Amended Complaint, alleging negligence on part of Defendants, was
recently dismissed by this Court.  (Doc. # 108.)

3

(1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

Here, the Court must therefore grant a motion for summary judgment if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## C. Propriety of Exhibits

Plaintiff's allegations are ostensibly supported by 44 exhibits. (Doc. # 130.) Officials have objected to their submission on various grounds. Thus, this Court must consider the propriety of each of Plaintiff's exhibits.

First, Officials object to Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 15, 16, 17, 18, 19, 20, 23, 24, 25, 27, 36, and 39 submitted by Plaintiff. (Doc. # 135.) Officials argue that these documents "are not pleadings, depositions, answers to interrogatories, admissions or exhibits to sworn affidavits that been authenticated." *Id.* The Court finds Officials' first objection well-taken.

4

Specifically, Exhibits 1, 2, 3, 4, 5, 12, and 13 appear to be unauthenticated, self-generated billing records.  Exhibits 7, 9, 10, 20, and 24 are copies of unauthenticated letters and correspondence.  Exhibit 8 is an unauthenticated photocopy of a cashier's check.  Exhibit 15 appears to be an unsigned portion of a settlement statement.  Exhibit 16 is copy of a complaint filed against Plaintiff by St. Clairsville Municipal Utilities.  Exhibit 17 is a copy of an order to place a lien on Plaintiff's Terrace Property for unpaid electric bills.  Exhibit 18 appear to be "sample accounts."  Exhibits 19 and 23 are copies of work order requests.  Exhibit 25 appears to be a portion of a St. Clairsville Police Department work log.  Exhibit 36 is a power of attorney. Exhibit 39 is a fax cover sheet.

Although a party must produce evidence in support of its opposition to a motion for summary judgment, not all types of evidence are permissible.  *McQuain v. Ebner Furnaces, Inc*., 55 F. Supp. 2d 763, 769-70 (N.D. Ohio 1999).  For instance, unsupported and essentially unexplained statements are insufficient to survive summary judgment.  *See Simpson v. Midland-Ross Corp*., 823 F.2d 937, 941 (6th Cir. 1987) (stating "mere conclusory allegations do not suffice to prove intentional discrimination based on age").  Additionally, the Sixth Circuit has held that "it is well settled that only admissible evidence may be considered by the trial court in ruling on motion for summary judgment."  *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc*., 854 F.2d 1179, 1181 (9th Cir. 1988)). Admissible evidence is defined as "evidence that is relevant and of such a character . . . that the court should receive it."  (Black's Law Dictionary 235 (pocket ed. 1996)).  Federal Rule of Evidence 401 defines relevant evidence as "evidence having any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." Authentication is a special aspect of relevancy concerned with establishing the genuineness of evidence and is a condition precedent to admissibility. Fed. R. Evid. 901(a) and advisory committee's notes.

Evidence that is neither authenticated nor admissible "may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver." *McQuain*, 55 F. Supp. 2d at 770. Officials has objected to Plaintiff's proffered evidence as noted above. This Court finds that Plaintiff's exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 15, 16, 17, 18, 19, 20, 23, 24, 25, 27 are all unauthenticated, and that exhibits 36 and 39 have not been properly identified. Plaintiff should have introduced these exhibits into the record through affidavits or exhibits to depositions rather than submit them improperly by filing them as a collection of papers with the Court without authentication. Therefore, these exhibits are hereby stricken.[2] Fed R. Civ. P. 56(e); *see Baldwin v. Tessier*, No. Civ. A. 05-10898-DPW, 2006 WL 753244, at *1 (D. Mass Mar. 22, 2006) (stating that defendant should have introduced their exhibits into the record through affidavits to satisfy Rule 56) (citing *Cerqueira v. Cerqueira*, 828 F.2d 863, 865 (1st Cir. 1987)).

Next, Officials object to Exhibits 28, 29 and 31, purportedly the affidavits of George Novotny, Jim Howard, and William E. Rice, respectively. (Doc. # 135.) Officials argue that these affidavits should be stricken because "they are undated and none of these individuals were included in Plaintiff's Rule 26(a) initial disclosures or otherwise disclosed as witnesses by Plaintiff." (Doc. # 135.)

---

[2]     This Court also notes that it has already stricken Exhibit 27 from the record. (Doc. # 111.)

Fed R. Civ P. 26(a)(3) states, in relevant part, that:

a party must provide to other parties and promptly file with the court the following information regarding the evidence that it may present at trial other than solely for impeachment: (A) the name and, if not previously provided, the address and telephone number of each witness, separately identifying those whom the party expects to present and those whom the party may call if the need arises[.]

*Id.*

This Court finds that none of the individuals named in Exhibits 28, 29, 31[3] were included in Plaintiff's Rule 26(a) initial disclosures or otherwise disclosed as witnesses by Plaintiff. Moreover, Plaintiff breached his duty to supplement his 26(a) disclosures when he decided to add a witness that he did not initially disclose. Fed. R. Civ P. 26(a)(3); *see Wilson v. AM General Corp.*, 167 F.3d 1114, 1122 (7th Cir. 1999). Therefore, this Court strikes Exhibits 28, 29, and 31 from the record.

Lastly, Officials object to and moves to strike Exhibits 11, 14, 22, 26, 32, 33, 34, 35, 37, 38, 40 and 41 (Doc. # 135), which have been identified as portions of deposition transcripts. Officials contend that these exhibits should be stricken because none of these deposition transcript portions are accompanied by a court reporter's certification. This Court cannot consider transcripts filed with this Court that fail to qualify as proper summary judgment evidence under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 30(f)(1); *Soliday v. Miami County, Ohio,* No. C-3-91-153, 1993 WL 1377511, at *5 n.4 (S.D. Ohio Nov. 22, 1993) (stating that "the Court cannot consider" deposition testimony referenced in summary judgment reply memorandum but not filed with court); *Moore v. Florida Bank of Commerce*, 654 F. Supp. 38, 41 n.2 (S.D. Ohio 1986) (unauthenticated deposition not filed with court is not proper material under Rule 56); *Podlesnick*

---

[3]     This Court also notes that Exhibit 31 is improperly notarized. Ohio Rev. Code § 147.55

*v. Airborne Express, Inc.*, 550 F. Supp. 906, 910 (S.D. Ohio 1982) (depositions not filed with court but referred to in summary judgment memoranda were not considered in court's decision); *see also Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (discussing unauthenticated deposition extracts).

Despite Officials' contentions, this Court finds that Exhibits 11, 32, 33, 40, 41 are admissible because the record contains complete copies of these depositions all of which are properly certified and therefore comply with requirements of Fed. R. Civ. P. 30(f)(1).[4] Conversely, this Court find that Exhibits 14, 22, 26, 34, 35, 37 and 38 are merely portions of deposition transcripts all of which are unaccompanied by a court reporter's certification. Moreover, the record does not contain a complete certified copy of these depositions.  Therefore, this Court strikes Exhibits 14, 22, 26, 34, 35, 37 and 38 from the record.  *See* Fed. R. Civ. P. 30(f)(1).

Based upon the foregoing reasons, this Court's analysis of the motion at hand do not rely on the exhibits that this Court has stricken from the record.

### D. Analysis

### 1. Count One: Tortious Interference with Contract and Business Relationship and Prospective Business Advantage

Count One of the Third Amended Complaint (Doc. # 59) is based on two separate sets of allegations.  First, Plaintiff alleges that defendants interfered with his lease agreements with tenants at the Terrace Property by: (1) fraudulently billing for water not actually used by residents; (2) falsely stating to Terrace residents that Plaintiff had not paid his water bill and that

---

[4]        Fed. R Civ. P. 30(f)(1) states in pertinent part that "[t]he officer must certify that the witness was duly sworn by the officer and that the deposition is a true record of the testimony given by the witness."

defendants would terminate water service; (3) placing false liens on the property; and (4) refusing to maintain electric utility poles on the property, all of which was "an illegal attempt to coerce the plaintiff into selling or donating the Interstate property to the City or the defendants, or for the defendants' benefit. " *Id.* ¶¶ 51, 52.  As a result of that conduct, Plaintiff alleges that he suffered emotional distress and was forced to sell the Terrace Property at a significant loss.  *Id.* ¶ 51.

Second, with respect to the Interstate Property, Plaintiff alleges that defendants interfered with his rights under a lease of that property by "illegally annexing and zoning the plaintiff's property and improperly refusing to allow plaintiff's tenant to expand the commercial business thereon" and by advising prospective purchasers of the property that "they would not be allowed to use the land in accordance with their plans."  *Id.* at ¶¶ 54, 55.

"The tort of interference with a business relationship and contract rights occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (1995).  To establish a cause of action a plaintiff must show the following: (1) the existence of a contract and/or a business relationship; (2) the wrongdoer's knowledge thereof; (3) the wrongdoer's intentional interference causing a breach or termination of the relationship; (4) lack of justification; and (5) resulting damages.  *Fred Siegal Co., L.P.A. v. Arter and Hadden*, 85 Ohio St. 3d 171, 176, 707 N.E.2d 853, 858 (1999)*; Chandler & Assoc., Inc. v. America's Healthcare Alliance*, Inc., 125 Ohio App. 3d 572, 583, 709 N.E.2d 190, 197 (1997).

This Court finds that there is no genuine issue of material fact that suggests that Officials tortiously interfered with Plaintiff's contractual rights or business relations with the tenants and/or

prospective purchasers at either the Terrace Property or the Interstate Property. (Doc. # 116.)  In sum, the affidavits of Officials state that none of them were ever involved or had knowledge of any conspiracy or effort to: (1) generate fraudulent water, sewer, or electric bills for the Terrace Property; (2) generate or file fraudulent liens for unpaid utility bills on Plaintiff's Terrace Property; (3) refuse to maintain city-owned electric utility poles at Plaintiff's Terrace Property; or (4) pressure Plaintiff to sell his Interstate Property.  (Doc. # 116.)  Except for mere, unsupported allegations and generalized suppositions, Plaintiff offers no evidence to rebut the affidavits.  After reviewing all of the affidavits, depositions, and exhibits, this Court finds that the record is devoid of any specific evidence against the individual Officials on which this Court can rely to create an issue of material fact.  Thus, this Court grants Officials' motion for summary judgment on Count One.

### 2. Count Two: Wrongful Annexation under Ohio Law

Plaintiff alleges that St. Clairsville at the direction of the Officials annexed Plaintiff's Interstate property in violation of multiple substantive and procedural requirements of Ohio's annexation law.  (Doc. # 59 ¶ 60.)  Plaintiff argues that defendants: (1) annexed and zoned the Interstate Property despite knowledge that Plaintiff's signature on the annexation petition was forged and that the matters stated in the petition for annexation were false; (2) failed to notify Plaintiff of the annexation of his property; (3) zoned restrictively the property as "Office and Institution" despite knowledge that Plaintiff's signature had been forged; and (4) refused to de-annex the Interstate Property despite knowledge that his signature had been forged.  (Doc. # 59 ¶¶ 60-61.)

This Courts finds that there is a genuine issue of fact as to whether Plaintiff's signature

was forged: Plaintiff contends in his deposition that his signature was forged (Doc. # 95 at 95-97), which directly contradicts the statement of Defendant Kigerl that Plaintiff signed the annexation petition in his presence.  (Exhibit # 30.)  The factual dispute aforementioned, however, is immaterial to Officials' motion for summary judgment on Count Two.

More importantly, this Court finds that there is no genuine issue of material fact that suggests that the Officials forged Plaintiff's signature, knew or had reason to believe that Plaintiff's signature had been forged, or knew that other matters contained in the petition were false.  The affidavits of Bigler, Davies, and Vincenzo state that they did not forge Plaintiff's signature, that they have no knowledge of anyone else forging Plaintiff's name, and that they had no reason to believe, or even suspect, that Plaintiff was claiming that his signature on the petition had been forged.  (Doc. # 116.)  The affidavits of Fortney and Murphy state that they did not forge Plaintiff's signature and have no knowledge of anyone else forging Plaintiff's name.  (Doc. # 116.)  Moreover, Plaintiff's own deposition reveals that while Plaintiff claims that his signature was forged, Plaintiff's belief that it was forged by one of the Officials is based merely on "suspicion."  (Doc. # 95 at 103-04.)  Thus, to the extent that Plaintiff's claim for wrongful annexation is based upon Officials' knowledge of the forgery or Officials' reason to believe that the petition was false, Plaintiff, as the nonmoving party, has not met his burden at this summary judgment stage by presenting evidence of a legitimate factual dispute.

Nevertheless, Plaintiff advances a new argument in his memorandum in opposition (Doc. # 125) that he did not previously allege in the Third Amended Complaint.  (Doc. # 59.)  Specifically, Plaintiff argues that the "city's knowledge is entirely irrelevant to the validity of the annexation itself."  (Doc. # 125.)  Plaintiff then contends that because his signature was obtained

11

by forgery the entire annexation petition is void.  *Id.*  In response, Officials argue that because the legal theory advanced by Plaintiff in opposition to Officials' motion for summary judgment is not one that Plaintiff raised in the Third Amended Complaint (Doc. # 59), Plaintiff may not oppose Defendant's motion on that basis.  *Id.*

    This Court recognizes the merit of Officials' argument to extent that Plaintiff is advancing a new legal argument, however, whether Plaintiff offers a new legal argument, his claim under which his argument is made remains the same: Officials violated both procedural and substantive requirements of Ohio's annexation law.

    If this Court granted summary judgment to Officials on Count Two based solely on the allegations of the Third Amended Complaint (Doc. # 59), it would provide the opportunity for Plaintiff to contend that he made a legitimate argument, which fell within the contours of Count Two, and this Court ignored it.  This Court is willing to accept that Plaintiff's may advance his most recent argument that knowledge is entirely irrelevant, however, this Court must still find that Officials are entitled to summary judgment.

    For the reasons that follow, this Court rejects Plaintiff's argument that one void signature invalidates the entire annexation petition.  Even if the Court accepted arguendo that Plaintiff's signature is void,  Plaintiff's annexation petition is valid, as matter of law, notwithstanding the argument over Plaintiff's signature.

    The version of Chapter 709 of the Ohio Revised Code in effect during the time in question sets forth the requirements for the annexation of property to an Ohio municipality.  It states that owners of real estate contiguous to a municipal corporation may submit a petition for annexation of the property to the board of county commissioners.  Ohio Rev. Code §§ 709.02 (A)(B).  Valid

signatures of a majority of the owners of the parcels proposed for the annexation must appear on the petition. *Id*. § 709.02(C)(1). Within five days of filing of the petition, the board of commissioners must fix a date, time, and place for the hearing on the petition. *Id.* § 709.023(B). Then, the agent for the petitioners must send notice of the hearing to the affected municipality, to all the owners of the properties proposed to be annexed, and to the owners of the property adjacent to that property. *Id.* Upon receipt of the notice, the municipality must indicate what services it will provide to the annexed property, and notify the board of county of commissioners at least twenty days before the date of the hearing. *Id.* § 709.023(C). The board of commissioners must then conduct a public hearing at which time any owner who signed the petition for annexation may appear and testify that the owner's signature was obtained by fraud, duress, or misrepresentation. *Id.* § 709.023(C). If a majority of the county commissioners find that the owner's signatures was obtained improperly under these circumstances, they then shall find the signature to be void and shall order it to be removed from the petition as of the time that the petition was filed. *Id.* § 709.023(D).

After the hearing, the board may grant the petition if it finds that: (1) the petition meets all of the requirements set forth in Ohio Rev. Code 709.02; (2) the signatures on the petition were valid signatures of a majority of the owners of the territory to be annexed; (3) the municipality has complied with the obligations imposed on it by Ohio Rev. Code 709.03(D); (4) the territory proposed to be annexed is not unreasonably large; (5) the benefits outweigh the detriments on balance; and that (6) there is no street or highway that will be divided as to create a road maintenance problem. *Id.* § 709.033(A).

Subsequently, if the annexation is granted, the clerk of the board of county commissioners

13

then notifies the agent for the petitioners, the municipality, and the affected township. *Id.* §
709.033(B). The agent for petitioners, any owner of real estate in the territory proposed for
annexation, or the municipality may file an appeal from the commissioners' decision granting or
denying the petition for annexation. *Id.* § 709.07. The legislative authority of the municipality
must then accept or reject the petition for annexation. *Id.* §§§ 709.04, 709.05, 709.06.
Landowners of property may petition the board of commissioners for detachment of land that is
part of a municipality and the commissioners must then act on such a request. *Id.* § 709.38.

It is evident from the statutory framework that Plaintiff's contention that one arguably
forged signature nullifies the entire petition for annexation lacks merit. Beginning with Ohio
Rev. Code § 709.032(D), Plaintiff's theory contradicts the direct language of the statute.
Specifically, in a situation where the board finds after a challenge by the owner that in fact the
owner's signature was obtained improperly, the board does not, as Plaintiff argues, invalidate the
entire petition for annexation, rather the board "shall find the signature to be void and shall order
that it be removed from the petition as of the time that the petition was filed." *Id.* Thus, the
statute does not mandate that when an annexation petition contains a fraudulent signature the
entire annexation petition is invalid as Plaintiff posits. (Doc. # 125 at 2.) Thus, section
709.032(D) is entirely consistent with §§ 709.02(C)(1) and 709.033(C)(2), which emphasize that
a petition is legitimate if the number of valid signatures constitutes a majority of the owners of the
real estate in that territory.

The plain language of 709.032(D), 709.02(C)(1), and 709.0333(C)(2) when read *in pari
materia* support the following proposition: as long as a majority of the signatures on the
annexation petition are valid, the petition itself is valid regardless of whether some of the

14

signatures not required for a majority were improperly obtained and subsequently stricken by the board.  *See Schulte v. Flick*, 89 Ohio App. 252, N.E.2d 301 (1951) (stating that where a petition for annexation has been duly filed with the county commissioners, so far as to the sufficiency of the signatures to the petition is concerned, the only finding necessary is that such petition was signed at the time by a majority of the freeholders residing in the territory).

Plaintiff's argument that Officials failed to comply with Ohio's annexation law fails for several reasons.  First, it is undisputed that the Interstate Property that was annexed consisted of three separate parcels, one of which was the Plaintiff's, and that the owners of the two adjacent parcels of property signed the petition for annexation.  (Doc. # 114.)  Plaintiff has offered no evidence to create a genuine issue of material fact to suggest that either of the other two of the signatures are invalid.[5]  Moreover, even if this Court were to consider the affidavit of William E. Rice (Exhibit # 31), Plaintiff offers no evidence that he or the other landowners exercised their right to challenge the validity of the signatures at the hearing before the Belmont County Board of Commissioners pursuant to § 709.032(D).  Pursuant to the statutory scheme, the Belmont County Board of Commissioners lawfully approved the annexation petition.  Ohio Rev. Code §§§ 709.032(D), 709.02(C)(1) and 709.0333(C)(2); *see Schulte*, 89 Ohio App. 252, N.E.2d 301.

Second, this Court rejects Plaintiff's argument that he is entitled to "de-annexation" of his Interstate Property because Officials failed to notify him of the annexation.  Under the facts of this case, it is the agent of the petitioners, not the officials of the municipality that has the obligation to provide notification of the petition for annexation.  Ohio Rev. Code § 709.023(B)

---

[5]     This Court notes that the affidavit of William E. Rice (Exhibit # 31) has been stricken from the record.

Lastly, the Court rejects Plaintiff's wrongful annexation claim on the ground that "defendant willingly refused to take action to de-annex the property despite knowledge that Plaintiff's signature had been forged. . . ." (Doc. # 59 ¶ 61.) First, this Court has already found that if knowledge is relevant, there is no genuine issue of material fact as to whether Officials knew or should have known that Plaintiff's signature was forged. Second, § 709.38 of the Ohio Rev. Code sets forth the requirements for a petition for detachment of lands. The statute provides in pertinent part that the duty to act on a petition for detachment lies with the Belmont County Board of Commissioners not Officials. *Id.* § 709.38. Moreover, it is the Belmont County Board of Commissioners that has the final authority to approve a "de-annexation" of a property from a municipality. *Id.* In fact, Plaintiff acknowledges that the Belmont County Board of Commissioners is the appropriate party to handle a petition for detachment when he mailed his petition for detachment after employees of the courthouse instructed him to do so. (Doc. # 95 at 105.) Moreover, Plaintiff has failed to name the Belmont County Board of Commissioners a party in this case. Thus, Plaintiff's last argument lacks merit as well.

In sum, there is no genuine issue of material fact to suggest that Officials violated the procedural or substantive requirements of Ohio's annexation law. Therefore, this Court grants Officials' motion for summary judgment on Count Two.

### 3. Count Three: Taking in Violation of the Fifth Amendment of United States Constitution

In Count Three of the Third Amended Complaint (Doc. # 59), Plaintiff alleges that defendants "took" Plaintiff's Interstate Property by the following means: (1) annexing the property without complying with the requirements of Ohio law governing annexation of realty; (2) zoning the Interstate Property so as to intentionally interfere with Plaintiff's contracts to lease

16

and sell the property; (3) participating in a scheme to forge Plaintiff's signature and thereby annex and zone the property despite knowledge that Plaintiff's signature was false.  (Doc. # 59 ¶¶ 66, 67.)  In addition, Plaintiff alleges that defendants "took" Plaintiff's Terrace Property by: (1) knowingly overcharging Plaintiff for water being provided to the property; (2) intentionally refusing  to maintain the electric poles so as to create physically dangerous conditions on the property; (3) falsely informing tenants that the water service would be terminated if Plaintiff did not pay his water bill; and (4) fraudulently filing liens on the property.  *Id.* ¶ 69.

Officials argue that Plaintiff's taking claims related to annexation and zoning are not ripe because Plaintiff has failed to exhaust the remedies available to him under Ohio law.  (Doc. # 114 at 12, 13).  Specifically, Officials posit that if Plaintiff believes that a taking of his property has occurred and the state provides an adequate procedure for an owner to seek just compensation for a taking of his property, then Plaintiff must first attempt to use that procedure and be denied compensation in order to have a ripe taking claim.  *Id.*  Officials further argue that the following remedies are available to Plaintiff under Ohio law: (1) a mandamus procedure, which is both a reasonable and adequate means for Plaintiff to pursue compensation for an alleged taking by the state or one of its political subdivisions, and (2) an appeal to the common pleas court as a property owner who has been allegedly aggrieved by a zoning decision of a municipality.  *Id.* Essentially, Plaintiff argues a mandamus action would be futile because it would not enable an Ohio court to order the remedy needed: the de-annexation of the property.  In sum, Plaintiff contends that a futile remedy is not considered an "available" remedy that Plaintiff is required to exhaust.  This Court is convinced by Officials' argument.

The United States Supreme Court has emphasized that "the Fifth Amendment does not

17

prohibit the government from taking private property; it prohibits the government from taking private property without just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985).  Furthermore, the Fifth Amendment requires that a " 'reasonable, certain, and adequate provision for obtaining compensation' exist at the time of the taking." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-25 (1974) (quoting *Cherokee Nation v. Southern Kansas R. Co.*, 135 U.S. 641, 659 (1890)); *see also Williamson County Reg'l Planning Comm'n,* 473 U.S. at 194.   If a state provides an adequate procedure for an owner to seek just compensation for a "taking" of his property; a property owner is required to use the procedure that the state provides.  *Williamson County Reg'l Planning Comm'n,* 473 U.S. at 194-95.  Only after a property owner has been denied compensation after utilizing the provided procedure, does the owner have a "ripe" taking claim.  *Williamson County Reg'l Planning Comm'n,* 473 U.S. at 195.

Ohio law "provides a statutory mechanism by which the government actor seeking to take property is under a duty to bring an appropriation proceeding against the landowner." *Coles v. Granville*, 448 F.3d 853, 861 (6th Cir. 2006); *see* Ohio Rev. Code §§ 163.01- 163.62; *State ex rel. Shemo v. City of Mayfield Heights*, 95 Ohio St. 3d 59, 63, 765 N.E.2d 345 (2002).  If a property owner believes that a taking of his property has occurred without an appropriation proceeding he may initiate a mandamus action in an Ohio court to force the government actor into an appropriation proceeding.  *Coles*, 448 F.3d at 861; *see also Trafalgar Corp., v. Miami County Board of County Comm'rs*, No. 3:05-CV-084, 2006 WL 689112, at * 7 (S.D. Ohio Mar. 14, 2006) (stating that "[u]nder Ohio law, mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.")

The Sixth Circuit has recently held that the mandamus remedy permitted under Ohio law is a "reasonable, certain, and adequate" procedure by which plaintiffs may pursue compensation for an alleged involuntary taking. *Coles*, 448 F.3d at 865 (holding that because plaintiffs have failed to request mandamus from the state, their case is not ripe, and therefore the district court was correct in finding that it lacked jurisdiction over plaintiff's taking claims at that time.)

Like the plaintiff in *Coles*, Plaintiff in the present case failed to initiate a mandamus action for the alleged taking of his property, nor did he exercise his statutory right to appeal St. Clairsville's decision regarding the zoning of his property. (Doc. # 116-6.) Plaintiff futilely attempts to argue that the remedies were not "available to him" because he could not obtain the desired relief. This Court recognizes that Ohio courts are without power to de-annex property once a city council passes the ordinance accepting annexation. *See Gaverick v. Hoffman*, 23 Ohio St. 2d 74, 81-82; 262 N.E.2d 695, 700 (1970) (stating that it is well-established that absent an injunction or order staying further action, the adoption by the city council of an ordinance accepting annexation renders moot a case seeking to enjoin annexation); *State ex. rel Bd. of Trustees of Springfield Twp. v. Davis*, 2 Ohio St. 3d 108, 443 N.E. 2d 166 (1982). Nevertheless, this Court emphasizes that although Ohio courts are without authority to vacate or reverse an annexation after it occurred, such lack of authority does not preclude Plaintiff from pursuing a mandamus action to vindicate claims arising under both the Ohio and United States Constitution for the taking of property without just compensation. *See, e.g.*, *Coles*, 448 F.3d at 861-65; *Trafalgar Corp.*, 2006 WL 689112, at *7. Moreover, in Count Three of the Third Amended Complaint, Plaintiff does not seek equitable relief as his argument suggests, but rather Plaintiff seeks damages, which is precisely the remedy he may have obtained had he exercised his right to

19

pursue a mandamus action.  (Doc. # 59 ¶ 71.)

Additionally, Ohio law provides that a property owner who has been allegedly aggrieved by a zoning decision of a municipality may appeal that decision to the common pleas court of the county where the property lies.  Ohio Rev. Code § 2506.01.  Plaintiff, however, presents no evidence that he sought an appeal of the zoning decision.

Thus, this Court is unconvinced by Plaintiff's argument that remedies were not available to him because, in fact, he could have obtained his desired relief of just compensation and chose not to exercise these rights.

Although this Court finds that Plaintiff has failed to exhaust his remedies, even if Plaintiff's claim were ripe, this Court also finds for the reasons that follow that no taking occurred.

First, this Court will address Officials' alleged taking of Plaintiff's Interstate Property with respect to annexation.  After finding that no genuine issue of material fact existed as to whether Officials violated Ohio's laws regarding annexation, this Court granted Officials' motion for summary judgment on Plaintiff's wrongful annexation claim. (Count Two).  Consequently, this Court concludes that there is no genuine issue of material fact to suggest that an annexation of Plaintiff's Interstate Property amounts to a taking as Plaintiff contends.  Rather, the annexation procedure was strictly followed according to Ohio's statutes.

Second, in light of the fact that this Court has excluded and or stricken multiple exhibits submitted by Plaintiff, Plaintiff offers no evidence to create a genuine issue of material fact that suggests that Officials (1) intentionally overcharged Plaintiff for water services at the Terrace Property; (2) willingly refused to maintain electric poles at that property; (3) falsely informed

Terrace Property tenants that water service would be terminated if Plaintiff did not pay his water bill; and (4) fraudulently placed a lien on the property.  Thus, this Court also concludes that there is no genuine issue of material fact that suggests that a taking of Plaintiff's Terrace Property occurred.

As a result, this Court is left only to consider whether the zoning of the Interstate Property subsequent to annexation constituted a taking of Plaintiff's Interstate Property that would warrant just compensation.  For the reasons that follow, this Court finds that it did not.

The Takings clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.  "The Supreme Court has recognized two categories of takings: physical takings and regulatory takings." *Waste Mgmt., Inc. v. Metropolitan Gov't of Nashville*, 130 F.3d 731, 737 (6th Cir. 1997) (quoting *Penn Central Transp. Co v. City of New York*, 438 U.S. 104, 123-24 (1978)); *see also D.A.B.E., Inc., v. City of Toledo*, 292 F. Supp. 2d 968, 970 (2003).  A plaintiff seeking to challenge a government regulation as an uncompensated taking of private property may proceed by either alleging (1) a physical taking as mentioned above, (2) a "total regulatory" taking otherwise known as a categorical or complete taking, or finally (3) a partial taking that is sometimes referred to as a non-categorical taking.  *See Lingle v. Chevron*, 544 U.S. 528 (2005); *D.A.B.E., Inc.,* 292 F. Supp. at 971-72.  A physical taking occurs where the government physically intrudes on the plaintiff's property, or allows others to do so.  *See id.*

In this case, Plaintiff is not alleging a physical taking.  Plaintiff alleges, rather, that the zoning of his Interstate Property constituted a regulatory taking.  There are two levels of

regulatory takings.  First, a total regulation, which is one that allows the property owner "*no productive or economically beneficial use of land*" and entitles the property owner to just compensation under the Fifth Amendment.  *D.A.B.E., Inc.,* 292 F. Supp. at 971 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)).  Second, is a partial taking, which is a less intrusive regulation and prevents the property owner from some, but not all economic use of his land.  *D.A.B.E., Inc.,* 292 F. Supp. at 971; *Lucas*, 505 U.S. at 1019.  A partial taking may still entitle the property owner to just compensation, depending on the level of intrusion and the governmental interest at stake.  *D.A.B.E., Inc.,* 292 F. Supp. at 971-72; *see Anderson v. Charter Tp. Of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001).

In this case, Plaintiff argues that a zoning ordinance will result in a regulatory taking if the application of the ordinance does not (1) substantially advance a legitimate state interest or (2) denies the landowner economically viable use of his land.  (Doc. # 125 at 7, 8.)  Plaintiff's first argument misconstrues the law by failing to recognize the recent decision of the United States Supreme Court in *Lingle*. 544 U.S. 528 (2005).  In *Lingle*, the Court abrogated its decision in *Agins v. Tiburon*, 447 U.S. 225 (1980) when it held that the " 'substantially advances' formula is not a valid takings test," and concluded that "it has no place in our takings jurisprudence." *Id*. at 548.  Rather, the " 'substantially advances' formula essentially is a due process inquiry that is logically prior and distinct from the question whether a regulation effects a taking, for the Takings clause presupposes that the government has acted in pursuit of a valid public purpose." *Id*. at 543.  For example, if the government's actions are found to be so arbitrary as to violate due process, then the inquiry ends.  *Id*.  No amount of compensation can authorize the government action.  *Id*.  Thus, this Court must first consider whether the zoning classification  was so arbitrary

as to violate due process as alleged in Count Four of the Third Amended Complaint (Doc. # 59),
before it can consider whether the zoning classification amounted to a partial, non-categorical
taking as Plaintiff alleges.

Two of the claims that Plaintiff alleges in Count Four (Doc. # 59) are that the zoning
classification assigned to Plaintiff's interstate property (1) deprived the Plaintiff of his procedural
due process rights in violation of the Fourteenth and Fifth Amendment and (2) deprived Plaintiff
of his substantive due process rights as well.  (Doc. # 59 ¶¶ 73, 74.)

Plaintiff's procedural due process claim lacks merit.  Plaintiff attempts to base his
procedural due process claim on his contention that the zoning imposed by St. Clairsville "goes
too far and destroys the value of his property to such an extent that it amounts to a taking by
eminent domain without due process of law.  (Doc. # 125 at 15, 16.)

To succeed on a procedural due process claim, a plaintiff must establish a constitutionally
protected liberty or property interest and show that state action deprived him of that interest
without appropriate process.  *See, e.g., Midkiff v. Adams County Reg'l Water Dist*, 409 F.3d 758,
762 (6th Cir. 2005).

In *Matthew v. Eldridge*, 424 U.S. 319, 335, the Court set forth three factors that normally
determine whether an individual has received the "process" that the Constitution finds "due:"

> First, the private interest that will be affected by the official action; second,
> the risk of an erroneous deprivation of such interest through the procedures
> used, and the probable value, if any, of additional or substitute procedural
> safeguards; and finally, the Government's interest, including the function
> involved and the fiscal and administrative burdens that the additional or
> substitute procedural requirement would entail.

*City of Los Angeles v. David,* 538 U.S. 715, 716 (2003) (quoting *Matthew,* 424 U.S. at 335.)

By weighing these concerns, courts can determine whether a state has met the

"fundamental requirement of due process:" "the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *City of Los Angeles,* 538 U.S. at 717 (quoting *Matthew,* 424 U.S. at 335.)

Here, while Plaintiff clearly has a protected property interest in his own property, Plaintiff's procedural due process claim with respect to the zoning classification fails, however, in that Plaintiff does not allege (1) that he was not afforded notice of the City's intention to zone the property and (2) that he was not given the right to be heard on the matter.  Instead, Plaintiff testified that he was told of the zoning meeting, he attended the zoning meeting, and he voiced his concerns over the proposed, and later implemented, zoning classification.  (Doc. # 95 at 95-100.) Plaintiff offers no evidence to suggest that Defendant's zoning classification violated his procedural due process rights.

As mentioned earlier, Plaintiff argues that the zoning classification does not substantially advance a legitimate state interest, but rather the "selection of the zoning classification that the city applied to the plaintiff's property was arbitrary and capricious."  (Doc. # 125 at 16.)  Having restated Plaintiff's argument as a due process challenge, as the United States Supreme Court requires this Court to do, this Court finds that Defendant's zoning of Plaintiff's Interstate Property did not violate Plaintiff's substantive due process rights.

Substantive due process claims involve allegations of "(1) deprivations of a particular constitutional right and (2) actions that 'shock the conscience.' " *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469 (6th Cir. 1993) (quoting *Braley v. City of Pontiac*, 906 F.2d 220, 224-25 (6th Cir. 1990); *see also Midkiff*, 409 F.3d at 769.

Here, Plaintiff does not allege that the zoning ordinance "shocks the conscience," nor does

this Court find that it deprives Plaintiff of a constitutional right. The Sixth Circuit has made clear that a federal court's review of the validity of a zoning ordinance is highly deferential. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (1992). In *Pearson*, the Court stated that "federal court review of a zoning ordinance may only determine whether it is clearly arbitrary and unreasonable, in the very restricted sense that is has 'no substantial relation to the public health, safety, morals or general welfare.' " *Pearson*, 961 F.2d at 1223 (*citing, e.g.*, *Village of Belle Terre v. Borass*, 416 U.S. 1, 7-8 (1974)). Thus, a zoning ordinance that affects property interests is valid if it bears a rational relationship to the goals of the zoning. *Pearson*, 961 F.2d at 1224.

In *Pearson*, the Sixth Circuit affirmed the decision of the trial court finding that a rejection of a landowner's request for rezoning of his property to take advantage of an opportunity to sell his parcel for a fast food restaurant did not deprive the landowner of substantive due process. *Id.* In *Pearson*, the city legislative body held a hearing and heard statements by citizens who were concerned about traffic problems and over-commercialization of the area. *Id.* The trial court found that concerns about traffic and the deterioration of the neighborhood are rationally related to the goals of zoning. *Id.*

Here, Plaintiff alleges that Officials acted arbitrarily when it zoned the Interstate Property "Office and Institution." (Doc. # 125 at 16.) The Plaintiff argues that Officials acted without performing or examining environmental, economic, or traffic impact reports. *Id.* This Court finds that like *Pearson*, the decision to zone Plaintiff's property was made after the city planning commission conducted a public hearing and recommended that the property be zoned "Office and Institution." (Doc. # 116-6; Doc. # 116-7.) The city council then followed the planning commission's recommendation and voted to zone the property in that manner. (Doc. # 116-6.)

The record indicates that the agents of Officials adhered to a deliberate process in determining how to zone the annexed Interstate Property. (Docs. # 116-6; 116-7.)

Moreover, its decision reflected various concerns and considerations including: the property's proximity to Interstate 70 and the interchange, which made it an ideal location for business offices or hospitality services such as hotel, motel or restaurant. *Id.* The planning commission report found that these uses "are visible from the Interstate and have the advantage of easy-on, easy off access." (Doc. # 116-7.) The zoning decision also reflected that St. Clairsville is "sensitive to the existing residential uses in the area." *Id.* The law does not, as Plaintiff suggests, require Officials to engage in economic or environmental impact reports.

Thus, in light of the deferential standard of review that this Court must employ when reviewing the zoning ordinance, this Court finds that Officials clearly have demonstrated that there is a rational relationship between the zoning goals of St. Clairsville and the classification.

Because this Court concludes that the zoning classification did not violate Plaintiff's due process rights as alleged in Count Four of the Third Amended Complaint (Doc. # 59), it will now address why the zoning classification does not amount to a partial, non-categorical taking as Plaintiff alleges. (Doc. # 125 at 9,10.) In the context of a partial, non-categorical taking, the Sixth Circuit explained in *Waste Management:*

> [That] the Supreme Court has declined to lay out a set formula for
> determining whether a regulatory taking has occurred, preferring
> essentially to ad hoc, factual inquiries. The Court has, however, identified
> several factors which have particular significance in determining whether
> there has been a [partial regulatory] taking, namely 1) the character of the
> governmental action; 2) the economic impact of the regulation on the
> claimant; and 3) the extent to which the regulation has interfered with
> the claimant's distinct investment-backed expectations.

*D.A.B.E., Inc.,* 292 F. Supp. at 971-72 (quoting *Waste Mgmt., Inc.*, 130 F.3d at 737.)

Plaintiff argues that the economic impact in this case was "extreme" by claiming that after the zoning classification several potential buyers withdrew their offers, one reduced his offer, and another who occupied the property before the zoning cancelled his lease after it was zoned.  (Doc. # 125 at 9, 10.)

In the first place, the planning commission's recommendation to zone Plaintiff's Interstate Property "Office and Institution" did not deny Plaintiff of economically viable use of his land. There is no genuine issue of material fact as to the manner in which Plaintiff was permitted to use the Interstate Property after the zoning.  (Doc. # 114 at 11 ; Doc. # 116-6 ¶ 10.) Specifically, it is undisputed that the "Office and Institution" zoning classification permits the  property to be used for: "a business or professional office; institutional uses such as a school, hospital, library or church, a site for personal services such as a barber shop, beauty salons, or funeral parlor, hospitality services such as a motel, hotel or restaurant."  (Doc. # 116-6 ¶ 10.)

 A partial taking does not occur just because the owner is denied the highest and best use of the property.  *Loreto Dev. Co., Inc., v. Village of Chardon, Ohio*, Nos. 97-3502, 97-3656, 1998 WL 320981, at *4 (6th Cir. June 4, 1998) (citing *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962)) ("Concededly, the ordinance completely prohibits a beneficial use to which the property was previously devoted.  However, . . . the fact that it deprives the property of its most beneficial use does not render it unconstitutional.")

With respect to potential buyers reduction and/or withdrawal of their offers, while Courts are unwilling to use a certain percentage of diminution in value as a *per se* determination as to whether a taking has occurred, Courts have allowed a substantial diminution in value without finding a taking.  *See, e.g.*, *Loreto Dev. Co., Inc.,* 1998 WL 320981, at *4; *Euclid v. Ambler*

27

*Realty Co.*, 272 U.S. 365 (1926) (no taking even though the zoning ordinance reduced the value of land by 75 percent); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (no taking where regulation still allowed property owner to mine 50 percent of the value of its coal).

Plaintiff also contends that the planning commission's refusal to re-zone the property interferes with his reasonable investment-backed expectations. (Doc. # 125, at 10.) If a regulation on a property owner's justifiable, reasonable investment-backed expectations is sufficiently severe, a court may find that factor adequate to rule that a regulatory taking has occurred. *Loreto Dev. Co., Inc.,* 1998 WL 320981, at *4 (citing *Penn Central Transp. Co*., 438 U.S. at 124). Given the broad range of uses that the "Office and Institution" zoning classification permits and the insubstantial amount of evidence Plaintiff offers, this Court finds that the zoning classification's interference with Plaintiff's investment backed expectations, if any, is minimal.

This Court has essentially already examined the "character of the governmental action," when it determined that the zoning classification did not violate Plaintiff's procedural or substantive due process rights. The record shows that the zoning decision was a rational one that was reached by a systematic and deliberate process, which entailed a public hearing attended by Plaintiff, recommendations by the planning and zoning administrator and the planning commission, and finally approval by city council. (Doc. # 116-6; Doc. # 116-7.)

In sum, this Court finds that the zoning classification did not constitute a partial, non-categorical taking. Thus, this Court also grants Officials' motion for summary judgment on Count Three.

### 4. Count Four: Taking Without Due Process of Law and Count Six: a Violation of 42 U.S.C. § 1983

Because of the incoherent manner in which Plaintiff presents his allegations in the Third

Amended Complaint, this Court must address Count Four in light of Count Six.  In Count Four,

Plaintiff essentially repeats his allegations from Count Two and Three, and then argues that

Defendants' annexation, zoning, and refusal to de-annex his Interstate property constituted a

taking of his property in violation of Plaintiff's due process rights.  (Doc. # 59 ¶¶ 73, 74; Doc. #

125 at 15.)  In Count Six, Plaintiff alleges that Defendants essentially deprived Plaintiff of his due

process and equal protection rights in violation of 42 U.S.C. § 1983.  (Doc. # 59 ¶¶ 80, 81.)

Plaintiff mistakenly grants under Count Six a separate cause of action based on 42 U.S.C. § 1983

as if it in itself creates a right to sue.  *Id.*

       First, this Court emphasizes that Section 1983 in itself creates no substantive rights, rather

it merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of

rights established elsewhere.  *Joseph v. City of Columbus*, No. C2-04-754, 2006 WL 2795195, at

*4 (S.D. Ohio Sept. 27, 2006) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985)).  Section

1983 has two basic requirements: "(1) state action that (2) deprived an individual of  federal

statutory or constitutional rights."  *Joseph*, 2006 WL 2795195, at *4 (citing *Bloch v. Ribar*, 156

F.3d 673, 677 (6th Cir. 1998)). The Sixth Circuit emphasizes that it analyzes "section 1983

actions based on deprivations of due process as falling into two categories: violations of

procedural due process and violations of substantive due process." *Midkiff*, 409 F.3d at 762

(quoting *Mansfield Apartment Owners Ass'n*, 988 F.2d at 1473-74.)  Thus, Section 1983, if

applicable at all, is the proper vehicle for Plaintiff's allegations in Count Four.

       This Court has already held that (1) the zoning classification did not violate Plaintiff's

procedural or substantive due process rights and did not constitute a taking as alleged in Count

Three and that (2) there is no genuine issue of material fact to suggest that Officials violated the

procedural or substantive requirements of Ohio's annexation law.  (Doc. # 59.)  Moreover,

Plaintiff presents no evidence suggesting that any of Officials' actions have deprived him of any

other federal constitutional or statutory rights.  Thus, this Court grants Officials' motion for

summary judgment on Count Four and on Count Six.

### 5. Count Five: Civil Conspiracy

In Count Five of Plaintiff's Third Amended Complaint, Plaintiff alleges that

Defendants "willfully, intentionally, and maliciously conspired" among themselves to unlawfully

deprive Plaintiff of his property and his money.  (Doc. # 59 ¶ 77.)

A civil conspiracy is an agreement between two or more persons to injure another by

unlawful action.  *Aetna Cas. & Surety Co.,* 22 F. Supp. 2d at 703-04.   Under Ohio law, to

succeed on a claim of civil conspiracy, a plaintiff must show that: (1) the defendants shared a

common understanding or design to commit an unlawful act; (2) the alleged co-conspirator shared

in the general conspiratorial objective; and (3) an act was committed in furtherance of the

conspiracy that caused injury to the complainant.  *Id.*  "A conspiracy claim must be pled with

some degree of specificity, and vague or conclusory allegations that are unsupported by material

facts will not be sufficient to state a claim."  *Jordan v. Murphy*, 145 Fed. Appx. 513, 520 (6th Cir.

2005) (quoting *Avery v. Rossford, Ohio Transp. Improv. Dist*., 145 Ohio App. 3d 155, 762 N.E.2d

388 (Ohio App. 2001).

Officials posits that Plaintiff's claim of civil conspiracy fails under the "intra-corporate

conspiracy" theory, and that there is no evidence to suggest that Officials engaged in civil

conspiracy.  *Id.*  This Court agrees with both of Officials' arguments.

Plaintiff's claim for civil conspiracy is barred by the "intra-corporate conspiracy"

doctrine. The Sixth Circuit has adopted the general rule in civil conspiracy cases that employees of a corporation or governmental entity cannot conspire among themselves because they are treated as one entity. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Edu.*, 926 F.2d 505, 509 (6th Cir. 1991) (citing *Dougherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)). There can be no conspiracy between a municipality and its own agents or employees. *Id.* Thus, this Court also grants Officials' motion for summary judgment on Count Five.

### E. Conclusion

In conclusion, this Court **GRANTS** Defendant Officials' motion for summary judgment (Doc. # 116) on all counts of Plaintiff's Third Amended Complaint. The clerk shall enter judgment accordingly and terminate this Defendant upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

      **/s/ Gregory L. Frost**
      **GREGORY L. FROST**
      **UNITED STATES DISTRICT JUDGE**

31