**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SAMUEL HARRIS,**

**Plaintiff,**

**v.**

**Case No. C2-04-CV-1179**
**JUDGE GREGORY L. FROST**
**Magistrate Judge King**

**CITY OF ST. CLAIRSVILLE, OHIO, *et al.*,**

**Defendants.**

**OPINION AND ORDER**

This matter comes before the Court for consideration of a motion for summary judgment (Doc. # 115) filed by Defendant Jack J. Kigerl, Esq. ("Kigerl"), a memorandum in opposition (Doc. # 129) filed by Plaintiff Samuel Harris ("Plaintiff"), and a reply memorandum (Doc. # 132) filed by Kigerl.

**A. Background**

Plaintiff was the owner of two separate parcels of real property: the real estate adjacent to Interstate 70 ("Interstate Property"), which originally was located outside St. Clairsville, Ohio; and the Terrace Mobile Home Park ("Terrace Property"), which is located within St. Clairsville's limits. Plaintiff's Interstate Property (along with two adjacent parcels) was annexed from Richland Township to St. Clairsville in 2002.

Kigerl is a practicing lawyer in St. Clairsville. He identifies himself as Plaintiff's former lawyer for the "very narrow purpose of drafting the petition for annexation of real property that is involved in this case." (Doc. # 115 at 2.) Conversely, Plaintiff argues that he "never formed or intended to form any attorney/client relationship" with Kigerl, and that he never met with or spoke to Kigerl until after the present suit was brought." (Doc. # 129.)

St. Clairsville is a municipal corporation located in Belmont County, Ohio and is the exclusive provider of electric, water, and sewage services to the owners and occupants of property which is located within the city limits. It is also a political subdivision of the state of Ohio.

Plaintiff alleges that all defendants named in the Third Amended Complaint, as a group, engaged in a scheme for the purpose of forcing Plaintiff to part with a portion of Plaintiff's Interstate Property. Plaintiff further argues that defendants took two approaches in furtherance of the alleged conspiracy to pressure Plaintiff to sell the Interstate Property. First, Plaintiff alleges that defendants generated false and overstated water and electric bills for utility services at the Terrace Property. Plaintiff argues that defendants then enforced these inaccurate bills by improperly placing liens on the Terrace Property and directly interfering with the relationships between Plaintiff and the tenants of the Terrace Property.[1] Plaintiff alleges that defendants annexed Plaintiff's Interstate Property in violation of multiple substantive and procedural requirements of Ohio's annexation law. (Doc. # 59 ¶ 60.) Plaintiff states that he first discovered in late 2002 that the Interstate Property had been annexed when he learned that St. Clairsville was convening a planning commission meeting to consider zoning of the Interstate Property. Plaintiff attended the zoning meeting in February 2003 where he informed city council that he never signed the petition or agreed to annex his property.

With respect to Kigerl specifically, it appears that Plaintiff believes Kigerl's involvement consisted of: (1) conspiring to cause Plaintiff's forged signature to be placed on the petition for

[1] Although Plaintiff makes these general allegations in the Third Amended Complaint, no where in the record does he provide evidence in support of these allegations that suggests that Kigerl was involved in any manner with the Terrace Property.

annexation and upon a power of attorney; (2) knowing that Plaintiff's signature was forged; and (3) testifying falsely that Plaintiff signed the petition in his presence. (Doc. # 59; Doc. # 129.)

In connection with the allegations, Plaintiff seeks compensatory damages, punitive damages, and a court order "de-annexing" his Interstate Property under the following legal theories of relief: tortious interference with contract (Count One); illegal and improper annexation under Ohio law (Count Two); a "taking" of his property in violation of the Fifth and Fourteenth Amendment to the U.S. Constitution (Counts Three and Four); civil conspiracy (Count 5); and 42 U.S.C. § 1983 (Count 6).[2] Plaintiff did not file a separate complaint and/or bring a separate cause of action against Kigerl. Kigerl now moves for summary judgment.[3]

**B. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of showing the absence of any such "genuine issue" rests with the moving party: it must inform the district court of the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ P. 56(e).

The nonmoving party's burden at the summary judgment stage is as follows:

---

[2] Count Seven of the Third Amended Complaint, alleging negligence on part of Defendants, was recently dismissed by this Court. (Doc. # 108.)

[3] Because Kigerl in his motion for summary judgment (Doc. # 115) does not specify the Counts on which he is moving for summary judgment, this Court assumes that Kigerl is moving for summary judgment on all counts.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

Here, the Court must therefore grant a motion for summary judgment if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal*

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

**C. Propriety of Exhibits**

In its Opinion and Order granting St. Clairsville's motion for summary judgment (Doc. # 145) on all counts of Plaintiff's Third Amended Complaint, this Court struck from the record Plaintiff's Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 31, 34, 35, 36, 38 and 39. Here, Kigerl does not move to strike these exhibits, however, given this Court's prior analysis, it would be improper for this Court to now consider the exhibits aforementioned. Fed. R. Civ. P. 56(e). Consequently, this Court's analysis of the motion at hand does not rely on the exhibits that this Court has stricken from the record.

**D. Analysis**

**1. Count One: Tortious Interference with Contract and Business Relationship and Prospective Business Advantage**

Count One of the Third Amended Complaint (Doc. # 59) is based on two separate sets of allegations. First, Plaintiff alleges that all defendants named in the Third Amended Complaint interfered with his lease agreements with tenants at the Terrace Property by: (1) fraudulently billing for water not actually used by residents; (2) falsely stating to Terrace residents that Plaintiff had not paid his water bill and that St. Clairsville would terminate water service; (3) placing false liens on the property; and (4) refusing to maintain electric utility poles on the property, all of which was "an illegal attempt to coerce the plaintiff into selling or donating the Interstate property to the City or the defendants, or for the defendants' benefit. " *Id.* ¶¶ 51, 52. As a result of that conduct, Plaintiff alleges that he suffered emotional distress and was forced to sell the Terrace Property at a significant loss. *Id.* ¶ 51.

Second, with respect to the Interstate Property, Plaintiff alleges that defendants interfered with his rights under a lease of that property by "illegally annexing and zoning the plaintiff's property and improperly refusing to allow plaintiff's tenant to expand the commercial business thereon" and by advising prospective purchasers of the property that "they would not be allowed to use the land in accordance with their plans." *Id.* at ¶¶ 54, 55.

"The tort of interference with a business relationship and contract rights occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (1995). To establish a cause of action a plaintiff must show the following: (1) the existence of a contract and/or a business relationship; (2) the wrongdoer's knowledge thereof; (3) the wrongdoer's intentional interference causing a breach or termination of the relationship; (4) lack of justification; and (5) resulting damages. *Fred Siegal Co., L.P.A. v. Arter and Hadden*, 85 Ohio St. 3d 171, 176, 707 N.E.2d 853, 858 (1999); *Chandler & Assoc., Inc. v. America's Healthcare Alliance*, Inc., 125 Ohio App. 3d 572, 583, 709 N.E.2d 190, 197 (1997).

First, Plaintiff provides no evidence that suggests that Kigerl was involved in any manner with the Terrace Property or the zoning of the Interstate Property. Second, as for the annexation of Plaintiff's Interstate Property, this Court finds that Plaintiff offers no evidence that suggests that Kigerl tortiously interfered with Plaintiff's contractual rights or business relations with tenants or prospective purchasers of that Property.[4] Thus, this Court grants Kigerl's motion for

[4] This finding is also predicated on that fact this Court grants Defendant's motion for summary judgment on Plaintiff's wrongful annexation claim (Count Two).

summary judgment on Count One.

**2. Count Two: Wrongful Annexation under Ohio Law**

Plaintiff alleges that all defendants named in the Third Amended Complaint annexed Plaintiff's Interstate Property in violation of multiple substantive and procedural requirements of Ohio's annexation law. (Doc. # 59 ¶ 60.) Plaintiff argues that defendants: (1) annexed and zoned the Interstate Property despite knowledge that Plaintiff's signature on the annexation petition was forged and that the matters stated in the petition for annexation were false; (2) failed to notify Plaintiff of the annexation of his property; (3) zoned restrictively the property as "Office and Institution" despite knowledge that Plaintiff's signature had been forged; and (4) refused to de-annex the Interstate Property despite knowledge that his signature had been forged. (Doc. # 59 ¶¶ 60-61.)

This Court finds that there is a genuine issue of material fact as to whether Plaintiff's signature on the annexation petition was forged: Plaintiff contends in his deposition that his signature was forged (Doc. # 95 at 95-97), which directly contradicts the statement of Kigerl that Plaintiff signed the annexation petition in his presence. (Exhibit # 30.) Notwithstanding these disputed facts, in light of the evidence that Plaintiff offers in opposition to Kigerl's motion, this Court finds that there is no genuine issue of material fact that suggests that (1) Kigerl forged Plaintiff's signature on the petition or knew or had reason to believe that it was forged or (2) knew or had reason to believe that the matters contained in the petition were false. (Exhibit # 30.) Moreover, Plaintiff's own deposition reveals that while Plaintiff alleges that his signature was forged, Plaintiff does not know who allegedly forged his signature. (Doc. # 95 at 103-04.)

Thus, with respect to the actual allegations in Count Two of the Third Amended

Complaint (Doc. # 59 at ¶¶ 60,61) that pertain to Kigerl, Plaintiff, as the nonmoving party, is unable to meet his burden at the summary judgment stage by presenting evidence of a legitimate factual dispute. This Court grants Kigerl's motion for summary judgment on Count Two.

**3. Count Three: Taking in Violation of the Fifth Amendment of United States Constitution**

In Count Three of the Third Amended Complaint (Doc. # 59), Plaintiff alleges that all defendants named in the Third Amended Complaint, as a group, "took" Plaintiff's Interstate Property by the following means: (1) annexing the property without complying with the requirements of Ohio law governing annexation of realty; (2) zoning the Interstate Property so as to intentionally interfere with Plaintiff's contracts to lease and sell the property; (3) participating in a scheme to forge Plaintiff's signature and thereby annex and zone the property despite knowledge that Plaintiff's signature was false. (Doc. # 59 ¶¶ 66, 67.) In addition, Plaintiff alleges that defendants "took" Plaintiff's Terrace Property by: (1) knowingly overcharging Plaintiff for water being provided to the property; (2) intentionally refusing to maintain the electric poles so as to create physically dangerous conditions on the property; (3) falsely informing tenants that the water service would be terminated if Plaintiff did not pay his water bill; and (4) fraudulently filing liens on the property. *Id.* ¶ 69.

First, this Court will address the claim against Kigerl for the alleged taking of Plaintiff's Interstate Property with respect to annexation. After finding that no genuine issue of material fact existed as to whether Kigerl (1) forged Plaintiff's signature on the petition or knew or had reason to believe that it was forged or (2) knew or had reason to believe that the matters contained in the petition were false, this Court granted Kigerl's motion for summary judgment on Count Two. Second, Plaintiff offers no evidence to create a genuine issue of material fact

that suggests that Kigerl was involved in any manner with the zoning of Plaintiff's Interstate Property. (Doc. # 129.) Finally, Plaintiff offers no evidence to create a genuine issue of material fact that suggests that Kigerl was involved in any manner with Plaintiff's Terrace Property. (Doc. # 129.) Thus, this Court grants Defendant's motion for summary judgment on Count Three as well.

**4. Count Four: Taking Without Due Process of Law and Count Six: a Violation of 42 U.S.C. § 1983**

Because of the incoherent manner in which Plaintiff presents his allegations in the Third Amended Complaint, this Court must address Count Four in light of Count Six. In Count Four, Plaintiff essentially repeats his allegations from Count Two and Three, and then argues that Defendants' annexation, zoning, and refusal to de-annex his Interstate property constituted a taking of his property in violation of Plaintiff's due process rights. (Doc. # 59 ¶¶ 73, 74; Doc. # 125 at 15.) In Count Six, Plaintiff alleges that defendants essentially deprived Plaintiff of his due process and equal protection rights in violation of 42 U.S.C. § 1983. (Doc. # 59 ¶¶ 80, 81.) Plaintiff mistakenly argues under Count Six a separate cause of action based on 42 U.S.C. § 1983 as if it in itself creates a right to sue. *Id.*

First, this Court emphasizes that Section 1983 in itself creates no substantive rights, rather it merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Joseph v. City of Columbus*, No. C2-04-754, 2006 WL 2795195, at *4 (S.D. Ohio Sept. 27, 2006) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). Section 1983 has two basic requirements: "(1) state action that (2) deprived an individual of federal statutory or constitutional rights." *Joseph*, 2006 WL 2795195, at *4 (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). The Sixth Circuit emphasizes that it analyzes "section 1983

actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process." *Midkiff*, 409 F.3d at 762 (quoting *Mansfield Apartment Owners Ass'n*, 988 F.2d at 1473-74.) Thus, Section 1983, if applicable at all, is the proper vehicle for Plaintiff's allegations in Count Four.

Plaintiff does not allege, nor does this Court find, that Kigerl acted under the color of state law. Thus, this Court grants Defendant's motion for summary judgment on Count Four and on Count Six.

**5. Count Five: Civil Conspiracy**

In Count Five of Plaintiff's Third Amended Complaint, Plaintiff alleges that Defendants "willfully, intentionally, and maliciously conspired" among themselves to unlawfully deprive Plaintiff of his property and his money. (Doc. # 59 ¶ 77.)

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *Aetna Cas. & Surety Co.*, 22 F. Supp. 2d at 703-04. Under Ohio law, to succeed on a claim of civil conspiracy, a plaintiff must show that: (1) the defendants shared a common understanding or design to commit an unlawful act; (2) the alleged co-conspirator shared in the general conspiratorial objective; and (3) an act was committed in furtherance of the conspiracy that caused injury to the complainant. *Id.* "A conspiracy claim must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Jordan v. Murphy*, 145 Fed. Appx. 513, 520 (6th Cir. 2005) (quoting *Avery v. Rossford, Ohio Transp. Improv. Dist.*, 145 Ohio App. 3d 155, 762 N.E.2d 388 (Ohio App. 2001).

After reviewing all of the affidavits, depositions, and exhibits, this Court finds that the

record is devoid of any specific evidence against Kigerl on which this Court can rely to create an issue of material fact suggesting that Kigerl conspired in any manner with the other defendants. (Doc. # 129; Exhibit 30.) Thus, this Court also grants Defendant's motion for summary judgment on Count Five.

**6. Kigerl's "Legal Malpractice" Argument**

While this Court has granted on all counts Kigerl's motion for summary judgment, it will briefly address Kigerl's argument that Plaintiff's allegations against him must be seen as legal malpractice. (Doc. # 115 at 3.) Kigerl fails, however, to specify which Counts in the Third Amended Complaint (Doc. # 59) should be characterized as a legal malpractice claim. This Courts assumes that Kigerl's argument is predicated specifically on those Counts which allegedly involve him directly: Count Two, Count Three, and Count Five.

Specifically, Kigerl argues that Plaintiff's claim against him must be seen at malpractice because "the law in Ohio is clear that a mere attempt to label an action against a practicing attorney as one based other than legal malpractice, such as fraud, is insufficient, and the claim will continue to be governed by the elements applicable to a legal malpractice case." *Muir v. Hadler Real Estate Mgmt*, 4 Ohio App. 3d 89, 90, 446 N.E. 2d 820, 822 (10th Dist. Ohio Ct. App. 1982). This Court accepts Defendant's argument. Regardless of whether an action against one's attorney resulting from the manner in which the attorney represented the client is predicated upon contract or tort, it constitutes malpractice. *Id*. In order to prove an action for malpractice, a plaintiff must establish that: (1) an attorney/ client relationship[5]; (2) the attorney breached that duty; and (3) plaintiff suffered damages proximately caused by the breach. *Vahila*

[5] An attorney/client relationship gives rise to an attorney's duty to exercise the standard of care, skill, and diligence of members of the same profession practicing in the same or similar locality.

*v. Hall*, 77 Ohio St. 3d 421, 424 674 N.E. 2d 1164, 1167 (1977).

This Court finds that a genuine issue of fact exists as to whether an attorney/client relationship existed between Plaintiff and Kigerl. Plaintiff argues that he "never asked Mr. Kigerl to represent [him] on anything, anytime, or anywhere." (Doc. # 95 at 86.) Conversely Kigerl testifies that he represented Plaintiff for the sole purposes of preparing his annexation petition. (Doc. # 30 at 4-7.) The Court finds that this factual dispute to be non-dispositive**.** If, the Court accepts Plaintiff's argument that no attorney/client relationship ever existed between Plaintiff and Kigerl, then the Court's prior analysis, which granted Kigerl's motion for summary judgment on all counts, applies. Conversely, if the Court accepts Kigerl's argument that an attorney/client relationship did exist then Plaintiff's claim for malpractice is barred by the statute of limitations.

In Ohio, the statute of limitations for attorney malpractice is one year. Ohio Rev. Code § 2305.11(A). The statute of limitations commences when the attorney/client relationship for that particular transaction terminates or at the cognizable event at which plaintiff should have reasonablely discovered his injury and need to investigate a potential claim, whichever occurs later. Ohio Rev. Code § 2305.11(A); *see, e.g., Jackson v. Greger*, 110 Ohio St.3d 488, 854 N.E.2d 487 (Ohio 2006).

Here, Plaintiff first brought suit against Kigerl on January 27, 2006. (Doc. # 59.) The evidence, however, suggests that the Kigerl completed his legal work for Plaintiff at the time of execution of the petition for annexation on September 7, 2006. (Exhibit 30.) Moreover, Plaintiff alleges in his Third Amended Complaint that at a February 2003 zoning meeting he informed the city council that he never signed or agreed to annex his property to the St. Clairsville (Doc. # 59

¶ 40), and that on December 11, 2003, he submitted a petition for de-annexation. *Id*. ¶ 46. Even if this Court accepted the later date, December 11, 2003, as the date upon which the statute of limitations began to run, Plaintiff waited over two years to bring his suit against Kigerl. Thus, assuming an attorney-client relationship did, in fact, exist, Plaintiff's claim is barred by the statute of limitations.

## E. Conclusion

In conclusion, this Court **GRANTS** on all Six Counts Kigerl's motion for summary judgment. (Doc. # 115). The clerk shall enter judgment accordingly and terminate this Defendant upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**